UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FAN, LLC,                              ) | |
|                                        ) | |
|     Plaintiff,                         ) | |
|                                        ) | |
| vs.                                    ) | CV-09-BE-0924-S |
|                                        ) | |
| 2000 FIRST AVENUE NORTH, LLC,          ) | |
| and JEFFREY M. NOTRICA,                ) | |
|     Defendants.                        ) | |
|                                        ) | |

### MEMORANDUM OPINION

This matter is before the court on Plaintiff's "Motion for Summary Judgment" (doc. 20). Defendants responded (doc. 22), and Plaintiff filed a reply (doc. 23); this motion has been fully briefed. This case asserts two counts of breach of contract based on the alleged nonpayment of a promissory note. For the reasons stated in this Memorandum Opinion, the court finds that the motion is due to be GRANTED.

### I.  REQUEST TO STRIKE

In footnote 2 of its reply brief, Plaintiff requests that this court strike and refuse to consider Defendants' response. Plaintiff points out that although its own summary judgment submission complied with this court's Scheduling Order and Appendix II on this court's webpage, Defendants' response did not. For example, Defendants' response did not include a section responding to Plaintiff's undisputed facts, which Plaintiff properly set out in individually

1

numbered paragraphs with citations to the evidentiary record.  However, the court points out that – at least on that particular matter –  Defendants' failure to act does not necessarily correspond with failure to comply.  Rather, their silence – on all facts except the amount owed –  may suggest  an affirmative decision to avoid unnecessary effort; according to section D.2.a. of appendix II, silence results in Defendants' admission of those facts as true, a result they may well have intended all along.   Notably, Defendants did not dispute the validity of the documents attached to Mr. Ferris's first affidavit (doc. 20-2), which represented copies of the Note (doc. 20-3), the Mortgage (doc. 20-4), and the Guaranty (doc. 20-5), nor did they dispute that those documents were in force and effect.

     Defendants were not silent, however,  about their objection to one of Plaintiff's facts: they specifically disputed the amount of the principal balance due and provided a document supporting their own figure.  Their failure to refer to the paragraph number of the one fact they were disputing does not engender confusion, inconvenience Plaintiff or the court, or pose a burden to Defendants in composing a reply.  Accordingly, the court will ignore the transgression, and it acknowledges for the convenience of all concerned that Plaintiff's Undisputed Fact #27 is the specific fact that Defendants dispute.

     Defendants' failure to set out their own undisputed facts in separate, numbered paragraphs with citations to the evidentiary record also represents a failure to comply.  However, Defendants only raised two additional facts in a four page response, attaching a supporting exhibit for the second fact, and replying to that document should have posed no true burden.

     Perhaps the insignificance of the noncompliance explains why Plaintiff's request that the court strike Defendants' submissions was presented in a footnote, rendered even less forceful by

diminutive type.  Plaintiff is correct to chastise Defendants, and the court appreciates its admirable concern for Defendants' disregard of the court's submission requirements.  However, if Plaintiff truly wanted the court to act on this request, it should have done so by a separate motion to strike.  Not having received such a motion to point out the problem immediately, the court was unaware of this transgression until the time came for addressing and ruling upon the motion for summary judgment, and some time had admittedly passed to render the fault less easy to repair. In the absence of a formal motion on this request, the court will not issue a formal order denying it.  The court warns Defendants that it will not be so forgiving of compliance failures in future cases.

## II.  MOTION TO DISMISS

### A.  FACTS

Because Defendants did not object to any of the facts FAN presented except the principal amount due, the court accepts the following facts as true for the purposes of this motion.

Red Mountain Bank, N.A., the original plaintiff in this case, assigned to the current Plaintiff, FAN, LLC, the loan and resulting indebtedness upon which the instant suit is based. Accordingly, the court substituted FAN as Plaintiff.  For simplicity's sake, these facts will refer to both Red Mountain Bank and FAN, LLC as "FAN."

On or about August 30, 2005, FAN made a loan to 2000 First Avenue North, LLC (the "Borrower"), a Georgia limited liability company, in the original principal amount of $1,250,000.00.  In connection with that loan and on that same date, the Borrower executed in favor of FAN a promissory note, which was amended three times: on August 31, 2006, September 11, 2007, and August 28, 2008 (referred to collectively, as amended, as "the Note").

Also on August 30, 2005, the Borrower executed in favor of FAN a mortgage to secure the loan, encumbering certain real and personal property, and the Mortgage was recorded in Jefferson County Probate Court on August 31, 2005.  Further, on that same day, Defendant Notrica executed a guaranty agreement, unconditionally guaranteeing Borrower's obligations to FAN set forth in the Note and Mortgage (the Guaranty, the Note, and the Mortgage referred to collectively as "the Loan Documents").

The Note provides, in part, that "[u]pon occurrence of certain Events of Default, the LENDER shall have the option to declare the entire amount of principal and interest due under this Note immediately due and payable without notice or demand, and LENDER may exercise any of its rights under this Note and any document executed or delivered herewith. . . .*LENDER shall not be required to first. . .enforce its rights against any security for the payment of this Note.*" (Ferris Aff. #1., Ex. 1, doc. 20-3, at 4-5) (emphasis added).  The Note also contains a provision stating that it is to be governed by and construed according to Alabama law. (Ferris Aff. #1, Ex. 1, doc. 20-3, at 5).

The Mortgage provides:

> 16.  REMEDIES CUMULATIVE.  Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument . . .and may be exercised concurrently, independently or successively, in any order whatsoever."

(Ferris Aff. #1, Ex. 2, doc. 20-4, at 9) and:

> 23.  ADVANCES, COSTS AND EXPENSES.  Borrower shall pay within ten (10) days after written demand from LENDER all sums advanced by LENDER and all costs and expenses incurred by LENDER in taking any action pursuant to the Loan Documents. . . . All such costs and expenses incurred by LENDER, and advances made, shall constitute advances under this Instrument to protect the

> Property and shall be secured by and have the same priority as the lien of this Instrument.  If Borrower fails to pay any such advances, costs and expenses and interest thereon, *LENDER . . . without foreclosing the lien of this Instrument, may at its option commence an independent action against Borrower for the recover of the costs, expenses and/or advances. . . .*

(Ferris Aff. #1, Ex. 2, doc. 20-4, at 10) (emphasis added).

> 26.  RIGHTS AND REMEDIES ON DEFAULT
> 26.1 <u>Remedies.</u>  Upon the occurrence of any Event of Default and at any time thereafter, LENDER may exercise any one or more of the following rights and remedies:
> . . .
> (b) LENDER shall have the right to foreclose this Instrument in accordance with applicable law.
> . . .
> (g) LENDER shall have any other right or remedy provided in this Instrument, the Note, or any Loan Document. . . or available at law, in equity or otherwise.
> (h) LENDER shall have all the rights and remedies set forth in <u>Sections 23 and 24.</u>
>
> 26.4  <u>Waiver; Election of Remedies.</u> . . . Election by LENDER to pursue any remedy shall not exclude pursuit of any other remedy, and all remedies of LENDER under this Instrument are cumulative and not exclusive.

(Ferris Aff #1, Ex. 2, doc. 20-4, at 13-15).  The Mortgage further provides that it "shall be governed by the law of the State of Alabama applicable to contracts made and to be performed therein (excluding choice-of-law principles)."  (Ferris Aff. #1, Ex. 2, doc. 20-4, at 15).

The Guaranty similarly provides for FAN's election of remedies:

> 1.6 <u>No Duty to Pursue Others.</u>  It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations

>or any other person, (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan . . .(v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.
>
>5.10 <u>Rights and Remedies</u>. . . . The exercise by Lender of any right or remedy hereunder or any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

(Ferris Aff. #1, Ex. 3, doc. 20-5, at 3, 7).  The Guaranty further provides that it "shall be governed by and construed in accordance with the laws of the State of Alabama and the applicable laws of the United States of America."  (Ferris Aff. #1, Ex. 3, doc. 20-5, at 6).

The Borrower failed to make payments that the Note required at the time the Note required them.  In a letter dated February 27, 2009, FAN provided written notice to the Borrower and to Notrica that the Note was in default based on Borrower's payment defaults, and it demanded that the Borrower and Notrica pay in full the accelerated loan balance, including accrued interest and interest to accrue, from that date forward, under the default rate stated in the Note.  Neither the Borrower nor Notrica paid the loan balance.  This loan default is an "Event of Default" under section 25(a) of the Mortgage, and represents the first default of the Mortgage.

The Borrower also failed to pay ad valorem taxes for the years 2008 and 2009 on the real property that was the subject of the Mortgage, and this failure is an "Event of Default" under both the Note (page 2, at (b)) and the Mortgage (sections 4 and 25(b)), and represents the second default.

On May 11, 2009, FAN filed this breach of contract action against the Borrower and

Norica. One week after the action, FAN obtained an appraisal of the real property that was subject to the Mortgage and the value of the property as appraised was $250,000.00 more than the original principal loan amount. On October 16, 2009, FAN notified the Borrower and Norica of its intent to foreclose on that real property and scheduled a foreclosure sale for November 30, 2009, which was continued twice and eventually canceled.

FAN claims that as of March 12, 2010, the Borrower owed under the Note a principal balance of $1,134,557.76, plus accrued interest of $192,663.50 and late charges of $2,813.92, for a total amount owed of $1,330,035.18. Defendants state that the principal balance is $1,103,726.71, the principal balance listed in FAN's notice of intent to foreclose dated October 16, 2009. According to FAN's calculations, interest continues to accrue at a per diem rate of $472.73 subject to changes in the rate as stated in the Note. The Borrower is also liable for FAN's costs of collection, including attorneys' fees.

**B.  STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").

In reviewing the evidence submitted, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### C. DISCUSSION

1. Choice of Law

All of FAN's claims arise from the loan documents – the Note, Mortgage, and Guaranty – each of which contains a provision stating that it is to be governed by Alabama law. In contractual disputes, Alabama law directs that courts first look to the contract at issue to determine whether the parties have agreed that a particular sovereign's law will govern. *See Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *Cherry, Bekaert & Holland v. Brown,* 582 So. 2d 502, 506 (Ala. 1991). The court finds that the parties chose Alabama law to govern these agreements, and thus, that Alabama law applies to the claims in this case.

2. Breach of Contract

Under Alabama law, to establish a breach of contract claim, a plaintiff must establish "(1) the existence of a valid contract binding the parties in the action; (2) [the plaintiff's] performance under the contract; (3) the defendant's non-performance; and (4) damages." *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003) (quoting *Ex parte Coleman*, 861 So. 2d 1080, 1085

(Ala. 2003)). "Where the terms of the contract are unambiguous and the meaning of the contract can be determined as a matter of law, summary judgment is appropriate." *Barclay Intern., Inc. V. First Ala. Bank of Montgomery, N.A.,* 557 So. 2d 1201, 1205 (Ala. 1989).

In the instant case, Defendants do not dispute that FAN performed its obligations under the contract – the Note, along with supporting documents of the Mortgage and the Guaranty – by making the loan in question, and that the Borrower failed to perform by failing to make adequate and timely payments as and when due under the Note. Further, Defendants do not dispute that the Borrower failed to pay certain ad valorem taxes due on the property that was the subject of the Mortgage securing the loan under the Note. They do not dispute that the failure to make such loan payments and tax payments constituted "Events of Default" under the loan documents, nor do Defendants dispute that FAN was damaged because the amount loaned with attendant interest accrued remains outstanding. Thus, Defendants do not dispute that the Borrower breached the contract. Therefore, the court agrees with FAN that no disputed issue of material fact exists as to the elements of the breach of contract claim against the Borrower, and that FAN is entitled to judgment as a matter of law against the Borrower as to Count One.

Nor do Defendants deny that Nortrica unconditionally guaranteed the Borrower's performance pursuant to that loan contract and that the guaranty was in force an effect at the time of the Borrower's breach. Under Alabama law, a suit against a guarantor upon the default of a promissory note that he guaranteed in favor of a creditor is a breach of contract claim and is a claim upon which relief can be granted. *Delro Indus., Inc. v. Evans,* 514 So. 2d 976, 978-79 (Ala. 1987). Defendants do not dispute that after Borrower's breach of the loan contract and the Events of Default, FAN notified Nortrica of the breach and Events of Default and demanded that

Nortrica pay the amounts due as the guarantor, but that Nortrica failed to make the required payments. They do not dispute that FAN has suffered damage because the payments plus accrued interest remain outstanding. Thus, Defendants do not dispute that Nortrica breached the guaranty contract. Therefore, the court agrees with FAN that no disputed issue of material fact exists as to the elements of the breach of contract claim against Nortrica, and that FAN is entitled to judgment as a matter of law against Nortrica as to Count Two.

Instead of disputing that a breach occurred or that the guaranty agreement was in force, Defendants' response merely objects to FAN's choice of remedy for the breach, arguing that FAN should have first foreclosed on the mortgaged property instead of instituting a civil action against Defendants for money damages. That objection ignores the clear and unambiguous terms of the contract documents: the documents repeatedly state that after the breach, FAN, the Lender, has no obligation to exercise one remedy to rectify the breach before exercising others but rather, can pursue its legal remedies in any order or concurrently. *See* Ferris Aff. #1, Ex. 1 (the Note), doc. 20-3, at 4-5); Ex. 2 (the Mortgage), doc. 20-4, at 9, 10, 14-15); Ex. 3 (the Guaranty, doc. 20-5, at 3, 7). Indeed, the presence of clauses making this point in all three loan documents means that Defendants cannot claim ignorance unless they simply did not read the loan documents, which they are required to do. The terms of those documents control the relationship of the parties, and the terms clearly allow FAN to pursue this breach of contract action.

Given the court's rulings, the only task remaining is to determine the amount of damages attributable to the breaches. Defendants dispute that amount of the principal balance, and rely on the amount stated in the October 16, 2009 letter, attached as Exhibit A to their response (doc. 22, at 7-8). However, FAN explains the discrepancy between the amount of the principal balance

listed in its March 2010 brief through Carl Ferris's second affidavit. (doc. 23-1, at 2). Defendants have not provided any evidence to counter this explanation, and the evidence provided indicates that the dispute is not genuine. In any event, the court recognizes that some time has elapsed since the date this motion came under submission and that more expenses may have occurred.

Accordingly, the court will GRANT the motion for summary judgment, and will ENTER summary judgment in favor of Plaintiff, FAN, LLC, and against the Borrower, Defendant 2000 First Avenue North, LLC, as to the claim for breach of contract set forth in Count One; and further, will ENTER summary judgment in favor of Plaintiff, FAN, LLC, and against Defendant Notrica, as to the claim for breach of contract set forth in Count Two. Before the court determines the final amount of the judgment to be entered, the court provides Plaintiff leave to supplement **by August 26, 2010** the amount of damages requested, to include expenses that it incurred and interest that accrued since March 12, 2010, as well as evidence supporting those damages.

Dated this 16th day of August, 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE